UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONNIE G. ENGLE,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>       Defendant. | No. CV-07-0142-JPH<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on January 14, 2008. (Ct. Rec. 14). Plaintiff Connie G. Engle did not file a reply brief in the case. Attorney Jeffrey Schwab represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 17). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 22) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 19).

## **JURISDICTION**

On June 24, 2003, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since April 1, 1989, due to chronic depression, anxiety, a heart stent, asthma, and three herniated discs. Tr.

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 1

73. After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 37-38, 43-46, 49-51. On June 26, 2006, an ALJ held a hearing and took testimony from Plaintiff, represented by counsel, and a vocational expert ("VE"), Jill Dempsey. Tr. 779-829. On November 21, 2006, the ALJ issued a decision finding that Plaintiff was not disabled because she could work as an assembler (light, unskilled) or a final assembler (sedentary, unskilled). Tr. 30. The Appeals Council denied a request for review on April 10, 2007. Tr. 8-11. Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. 405(g). Plaintiff timely filed this action for judicial review on May 8, 2007. The relevant period under review is from June 2003 (the month Plaintiff filed her SSI application) to November 21, 2006 (date of the ALJ's decision). 20 C.F.R. § 416.330; Social Security Ruling ("SSR") 83-20.

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the parties' briefs and will only be summarized here. Plaintiff was born in 1962. Tr. 90. She was 41 years old when she filed the instant application in June 2003 and was 44 years old when the ALJ issued her decision in November 2006. Plaintiff completed the 8th grade, obtained a GED in 1996, and attended some college. Tr. 784, 126. She had past work experience as a home attendant and nurse's aid. Tr. 119, 147. She last worked as a home attendant in April 2004. Tr. 785.
///

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 2

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

    The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

1  Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
2  Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 5

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **DAA ANALYSIS**

An otherwise disabled individual is not entitled to disability benefits under the Act if drug addiction or alcoholism ("DAA") is a contributing factor material to disability. The Contract With America Advancement Act of 1996, Pub. L. No. 104-121 § 105(a)9C), amended the definition of disability under the Act to prohibit entitlement to disability benefits under Titles II and XVI for any individual whose disability is based on DAA. Title II of the Act now states: "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). Title XVI of

the Act contains a similarly worded provision for purposes of determining eligibility for SSI disability benefits.  42 U.S.C. § 1382c(a)(30)(J).

The Commissioner's disability regulations likewise state, "if we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a). Specifically, the "key factor" the Commissioner "will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."  *Id.* at § 416.935(b).  "If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id.*

If the ALJ finds the claimant disabled and there is medical evidence of DAA, the ALJ must determine the materiality of the claimant's DAA to his disability.  The ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if she would still be found disabled if she stopped using drugs or alcohol. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  The claimant bears the burden of proving that DAA is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 744-45, 748 (9th Cir. 2007), petition for cert filed, 76 U.S.L.W. 3169 (U.S. Sept. 21, 2007) (No. 07-408).

///

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 7

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since June 2003, the relevant time at issue (20 C.F.R. §§ 416.920(b) and 416.971 *et. seq.*). Tr. 20-21.

At step two, the ALJ determined that Plaintiff has severe impairments of depression, anxiety-related disorders, personality disorder, substance addiction disorder, degenerative disc disease, coronary artery disease, and asthma (20 C.F.R. § 416.920(c)), but found at step three that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. Tr 21. The ALJ specifically found that the evidence of record did not support a finding that hepatitis C and hypertension were severe impairments. Tr. 21-22.

The ALJ concluded and found, based on all the impairments including the substance abuse disorder(s), that Plaintiff has the RFC to perform light work activity. Tr. 22. The ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours out of an eight hour workday and stand and/or walk about six hours in an eight-hour workday. The ALJ also found Plaintiff able to occasionally climb, stoop, and crouch, but indicated Plaintiff should avoid more than moderate exposure to dust, fumes, odors and airborne particles, and unprotected heights and hazards. Tr.22. She could do simple repetitive tasks and should have no more than superficial interaction with the public. Tr. 22, 27.

The ALJ found that Plaintiff has several physical impairments that would limit her work to light physical exertion. In September 2002, she had a stent put in her coronary artery after

experiencing chest pain. Since the implant of the stent, nuclear stress tests have been normal and Plaintiff has been able to control her chest pain with medication and occasional nitroglycerin. An EKG in November 2005 was normal and her doctor opined that her heart problems were clinically stable. Tr. 22.

Additionally, the ALJ found that although the Plaintiff's back impairment is relatively mild, with degenerative disc disease of the lumbar spine, she had repeatedly reported that she had herniated discs. Tr. 22. Nerve conduction studies and MRI exams did not reveal the existence of any herniation. Tr.22.

As part of the analysis in finding that the Plaintiff has the RFC to perform light work, the ALJ made extensive findings concerning the Plaintiff's history of polysubstance abuse and drug seeking behavior. Tr.23. Notably, for the relevant period from June, 2003 to the date of hearing, November, 2006, the ALJ found that Plaintiff had a positive drug screen in August, 2003 for opiates, marijuana, and Hydrocone, and in November, 2003 it was found that she was using Oxycontin intravenously so her pain contract was terminated and she was offered drug treatment. In June, 2004, it was noted that Plaintiff's pupils were not reactive to light and in July, 2004 she was seen to discuss her narcotic drug use. At that time it was noted that she had multiple tracks on her arm and a left forearm abscess. In-patient drug treatment was recommended. Tr. 23. At hearing, Plaintiff acknowledged that she had been an intravenous user of Oxycontin for a two year period ending in September 2004 and had smoked marijuana up until six months before the hearing. Tr. 787.

///

The ALJ also made extensive findings concerning Plaintiff's history of mental impairments. Tr. 23-24. Plaintiff had a mental exam in October, 2002 by Thomas McKnight, Ph.D., who noted Plaintiff had been receiving treatment from Grant County Mental Health for dysthymia (a mood disorder) and post traumatic stress disorder ("PTSD"). Dr. McKnight did not find objective evidence of PTSD and found her mental status examination to be within normal limits. She had no problem with cognitive functioning. He diagnosed cannabis dependence, probable alcohol abuse, PTSD by history (well controlled) and a Global Assessment of Functioning ("GAF") score indicating no more than slight impairment in social, occupational or school functioning. He opined that there was no reason why the Plaintiff could not maintain employment, but noted her marijuana, alcohol and prescription drug use was a problem. Tr. 23.

Plaintiff next had a psychological examination done in January, 2004 by John Gilbert, Ph.D. Plaintiff told Dr. Gilbert that she had stopped using marijuana in 2001 and had no other drug use. The ALJ found this statement to be contrary to Plaintiff's medical history that shows she continued marijuana use up to 2006 and was an intravenous user of Oxycontin in November 1993. Tr. 594. She also told Dr. Gilbert that she had stopped taking antidepressants when the record shows that she was still taking Effexor and Librium. Tr. 24. Dr. Gilbert noted that the claimant appeared to be quite pain and disability focused. Dr. Gilbert was not aware of and did not diagnose any substance abuse disorder in Plaintiff, although he examined her just a few months after it was learned that she was using Oxycontin intravenously. Tr. 24.

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 10

Plaintiff had another psychological exam performed in August 2004 by Mahlon Dalley, Ph.D., who found she exaggerated her medical problems, and had no psychological disability that would prevent her from performing work activity. Dr. Dalley noted that the Plaintiff's long addiction to Librium was likely the cause of her depression and anxiety. Tr. 24.

The ALJ found that the Plaintiff is unable to perform any of her past work as a home attendant because she would not be able to tolerate the full range of medium exertion. At the hearing, the VE testified that the Plaintiff, with the RFC as determined, would be unable to return to any of her past relevant work. The ALJ found that testimony credible and consistent with the evidence. Tr. 25.

The ALJ found that the Plaintiff was born on April 13, 1962 and was 41 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 C.F.R. § 416.963). Tr. 25.

The ALJ found that the Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964). Tr. 26.

The ALJ found that the Plaintiff's acquired job skills do not transfer to other occupations within the residual functional capacity as defined (20 C.F.R. § 416.968). Tr. 26.

The ALJ found that considering the Plaintiff's age, education, work experience, and residual functioning capacity based on all of the impairments, including the substance use disorder(s), there are no jobs that exist in significant numbers

///

in the national economy that the Plaintiff can perform (20 C.F.R. §§ 416.960(c) and 416.966).  Tr. 26.

The ALJ then applied the DAA Analysis and made the following findings:

1. If the Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on the Plaintiff's ability to perform basic work activities; therefore, the Plaintiff would continue to have a severe impairment or combination of impairments.  Tr. 27.

2. If the Plaintiff stopped the substance use, the Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).  Tr. 27.

3. If the Plaintiff stopped the substance use, the Plaintiff would have the residual functional capacity to perform light work, which involves occasional lifting less than 20 pounds, frequent lifting or carrying of 10 pounds, sitting for 2 hours and standing/walking for 6 hours in an 8 hour workday and having good use of the arms and hands for repetitive grasping, holding and turning objects (i.e., gross manipulation).  The Plaintiff can occasionally climb, stoop, and crouch, and she should avoid exposure to dust, fumes, odors, airborne particles, and unprotected heights and hazards.  She can do simple repetitive tasks, but should have no more than superficial interaction with the public.  Tr. 27.

4. If the Plaintiff stopped the substance use, the Plaintiff would continue to be unable to perform past relevant work.  Tr. 29.

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 12

    5. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled", whether or not the Plaintiff has transferable job skills (*See* SSR 82-41 and 20 C.F.R. § 404 Subpt. P App. 2). Tr. 30.

    6. If the Plaintiff stopped the substance use, considering the Plaintiff's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the Plaintiff could perform (20 C.F.R. §§ 416.960(c) and 416.966). Tr. 30.

    7. Because the Plaintiff would not be disabled if she stopped the substance use (20 C.F.R. § 416.920(g)), the Plaintiff's substance use disorder(s) is a contributing factor material to the determination of disability (20 C.F.R. § 416.935). Thus, the Plaintiff has not been disabled within the meaning of the Act at any time from the day the application was filed through the date of this decision. Tr. 30.

    The ALJ concluded that the Plaintiff is not disabled under § 1614(a)(3)(A) of the Act. Tr. 31.

## **ISSUES**

    Plaintiff contends that the Secretary's decision is not supported by substantial evidence nor was the proper legal standard applied, specifically that:

    1. The ALJ's decision that Plaintiff's substance abuse disorder(s) is a contributing factor material to the determination of disability is legal error and is not supported by substantial evidence.

2. The ALJ's decision that the Plaintiff is capable of light physical exertion is legal error and is not supported by substantial evidence.

## **ANALYSIS**

### **A.  Attention and Concentration**

Plaintiff first argues that the ALJ erred by failing to account for her limitations on attention and concentration, in the absence of DAA.  Plaintiff's Memo. at 8.

Residual functional capacity is the most a claimant can do considering her impairments and limitations.  SSR 96-8p, *available at* 1996 WL 374184.  An ALJ must consider the record as a whole and explain how she weighs the medical evidence and testimony when determining a claimant's functional capacity.  20 C.F.R. § 416.946; SSR 96-5p, *available at* 1996 WL 374183.  An ALJ's decision is based on the record as a whole; no doctor's opinion or testimony is conclusive on the issue of residual functional capacity.  *Id*.  The ALJ's determination should be affirmed if the proper legal standard was applied and it is supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  Furthermore, the Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ found the Plaintiff could do simple repetitive tasks and have no more than superficial interaction with the public. Tr. 22, 27.  Plaintiff asserts the opinions of Drs. Underwood and Brown, the State agency doctors, or Drs. Gilbert and Dalley, Plaintiff's examining doctors, were not fully considered in that

1 they found Plaintiff had moderate limitations in concentration,
2 persistence, or pace and moderate difficulty with social,
3 occupational, or school functioning.  Plaintiff's Memo. at 9-10.
4     Plaintiff uses Dr. Brown and Underwood's notations on a
5 Psychiatric Review Technique Form ("PTRF") to support her claim
6 that she is moderately limited in maintaining concentration,
7 persistence, or pace.  Tr. 525, 634.  That finding should not be
8 confused with a residual functional capacity assessment.  An
9 assessment of residual functional capacity involves a more
10 detailed, narrative assessment of a claimant's functional
11 abilities.  SSR 96-8p, available at 1996 WL 374184, at *4.  Dr.
12 Underwood indicated that Plaintiff's preoccupation with pain might
13 limit her concentration at times.  Tr. 531.  However, she
14 concluded that Plaintiff was "<u>able to do simple tasks, able to
15 concentrate [and] attend on simple tasks, did well on mental
16 status items, able to complete ADL [and] would be able to do more
17 complex tasks in relatively low stress environment.</u>"  Tr. 531
18 (emphasis added).
19     Dr. Brown affirmed Dr. Underwood's mental residual functional
20 capacity assessment.  Tr. 624.  Dr. Brown also noted Plaintiff's
21 acknowledgment of IV drug use in his consultation and that her
22 history was "confused and confusing."  Tr. 636.
23     Assuming *arguendo* that Plaintiff's preoccupation with pain
24 might limit her concentration at times and that is inconsistent
25 with the ALJ's finding regarding residual mental functional
26 capacity, the ALJ's decision not to adopt additional concentration
27 limitations was, nonetheless, supported by substantial evidence.
28 The medical record overwhelmingly suggests the Plaintiff's pain

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 15

complaints were exaggerated and motivated by drug-seeking behavior. Tr. 514, 614. An ALJ may reject any doctor's opinion that is premised on a claimant's properly discredited subjective complaints. *Bayliss*, 427 F.3d at 1216-17; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ properly rejected Plaintiff's pain testimony, noting inconsistencies between the severity of Plaintiff's alleged symptoms, the objective medical record, and her daily activities. Tr. 27-29.

The ALJ also noted that Plaintiff exhibited a pattern of exaggeration and deception exemplified by drug-seeking behavior; for example, in seeking out narcotic pain medication, Plaintiff claimed to have herniated discs in her back. This claim is not supported by any medical evidence. Tr. 27-28, 190-192, 325-27, 330-32, 336-39, 431-35, 689. Additionally, both Drs. Gilbert and Dalley observed that Plaintiff was pain and disability focused and likely exaggerated her pain symptoms. Tr. 514, 647. Plaintiff did not disclose her current use of marijuana or past use of other recreational drugs to Dr. Gilbert at the time of her exam. Tr. 511. Exaggerating complaints of pain in order to receive prescription pain medication is a sufficient, clear and convincing reason to conclude that Plaintiff was not credible. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). For these reasons, the court finds the ALJ's decision not to adopt additional concentration limitations related to pain was supported by substantial evidence.

Plaintiff also contends that Drs. Gilbert and Dalley's estimate of her GAF scores as 60 and 55 are inconsistent with the

ALJ's mental RFC determination.  Plaintiff's Memo. at 9.  *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. TR 2000) (DSM-IV-TR).  Plaintiff argues that these GAF scores equate to an RFC assessment.  In fact, GAF scores are numerical estimates reflecting a clinician's judgment of an individual's overall level of functioning; they do not necessarily reflect a person's ability to work.  DSM-IV-TR at 32-34.

    Drs. Gilbert and Dalley's evaluations are consistent with the ALJ's determinations that the Plaintiff could do simple, repetitive tasks and have superficial interaction with the public.  Tr. 22, 27, 510-514.  Dr. Gilbert found that the Plaintiff had the ability to reason and understand.  Tr. 514.  He noted that she had some problems with concentration, but, nonetheless, was able to persist in tasks adequately.  Tr. 514.  He also noted that although her social interactions were somewhat impaired, she would not be prevented from engaging in gainful employment.  Tr. 514.  Dr. Dalley stated that Plaintiff "does not have a cognitive or psychological disability that would prevent her from performing in a work environment at an entry level position."  Tr. 647.  When evidence is subject to more than one interpretation and the ALJ's interpretation is rational, the Commissioner's decision should be affirmed.  *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005).

    Based on the foregoing, the court finds the ALJ properly concluded that, absent consideration of DAA, Plaintiff had no limitations on attention and concentration.  Tr. 25.

///

///

**B.  Dr. Rodemeyer**

Plaintiff next contends that the ALJ erred when she did not adopt Dr. Rodemeyer's opinion that Plaintiff was limited to sedentary work.  Plaintiff's Memo. at 10-11.  In determining a claimant's RFC, an ALJ considers all relevant medical evidence and is responsible for resolving its ambiguities and conflicts.  20 C.F.R. § 416.927; *Batson*, 359 F.3d at 1195.  An ALJ must give specific and legitimate reasons supported by substantial evidence to reject the opinion of a treating or examining doctor.  *Bayliss*, 427 F.3d at 1216.  An ALJ may satisfy this burden by summarizing the conflicting evidence in detail and interpreting it.  *Morgan*, 169 F.3d at 600; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Here, the ALJ gave specific reasons for rejecting the opinion of Dr. Rodemeyer.  Tr. 28-29.

The ALJ noted that Dr. Rodemeyer's opinion was in the form of a checklist, did not include supportive objective evidence, and appeared to be based primarily on Plaintiff's subjective complaints.  Tr. 28.  Opinions rendered in checklist form that are lacking supportive evidence and are based on a claimant's subjective complaints may be accorded less weight.  *Batson*, 359 F.3d at 1195; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  Although Dr. Rodemeyer limited Plaintiff to sedentary work, the ALJ noted contradictions between this conclusion and the doctor's examination findings.  On examination, Dr. Rodemeyer noted only mild abnormalities as follows:  Occasional wheezing aggravated by smoking; slight tenderness in lumbar-sacral on palpation; not considered a surgical candidate; normal upper extremity nerve conduction study.  Tr. 28-29, 650.  Contradictions

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 18

between a doctor's opinion of claimant's abilities and that doctor's clinical notes, observations and opinions of the claimant's capabilities "is a clear and convincing reason for not relying on the doctor's opinion[.]" *Bayliss*, 427 F.3d at 1216.

The ALJ also noted that the duration of Plaintiff's treating relationship with Dr. Rodemeyer was short. Tr. 29. At the time she filled out the form, Dr. Rodemeyer had been treating Plaintiff for less than one month. Tr. 652; 20 C.F.R. § 416.927(d)(2). Finally, the ALJ noted that Dr. Canfield's opinion contradicted Dr. Rodemeyer's conclusions. Tr. 29. Dr. Canfield was a specialist in orthopedics and had examined Plaintiff previously in 2002, making his treating relationship with Plaintiff comparable to Dr. Rodemeyer's; he noted that although Plaintiff had some disc degeneration at L5 and S2, there was nothing else that would suggest a problem with her back or neck. Tr. 689. An ALJ generally gives more weight to the opinion of a specialist about medical issues related to his area of specialty than to a generalist. 20 CFR § 416.927(d)(5). For these reasons, the undersigned finds the ALJ properly gave less weight to the opinion of Dr. Rodemeyer in determining Plaintiff's residual functional capacity.

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned concludes that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 19

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 19**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 22**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___30th___ day of January, 2008.

                                      *S/James P. Hutton*
                                      JAMES P. HUTTON
                         UNITED STATES MAGISTRATE JUDGE